LUKENS PEARCE and JOSEPH M. CHAMBERS v. EDWARD J. CARTER.

In an action upon a contract to deliver goods at a particular station on a railroad for transportation over it, for the non-delivery of them, if there was at the time of the promised delivery no market value ascertainable for such goods at such station, evidence of the market value of them at the time, at the next nearest station on the road is admissible.

It is not every false representation, even when made with a full knowledge of its falsity, that will amount in judgment of law to such a fraud as will invalidate a contract. But a false representation by a party of a fact materially affecting the value of the contract, peculiarly within his own knowledge, and in respect to which, the other party, in the exercise of proper vigilance, had not an equal opportunity of ascertaining the truth, is fraudulent, and will vitiate any contract obtained or procured under the influence of such false representation. If, however, the truth or falsity of the representations might have been tested by ordinary vigilance and attention, it is the party's own fault, if he neglects to do so, and the law holds him under such circumstances to be without remedy.

And, therefore, it seems to be well settled that misrepresentations made by one party contracting with another, as to the quantity or value of a commodity or article in the market, where correct information on the subject is equally within the power of both parties, if they act with equal diligence, do not in contemplation of law constitute fraud. And such is the law when it appears that both parties in this respect, are dealing with each other on equal terms, and no relations of trust or confidence exist between them.

THIS was an action of assumpsit by the plaintiffs, Lu-

49

kens Pearce and Joseph M. Chambers, against Edward J. Carter, the defendant, for his refusal to comply ·with the following contract of sale on his part with them :

" Willow Grove, July 14, 1865.

This is to certify that I have sold my entire crop of peaches this year, and also Thomas Reynolds', to Lukens Pearce and J. M. Chambers, to be delivered at Willow Grove Station in five-eights (⅝) baskets in good merchantable order for the sum of sixty-five cents (65cts.) per basket, returns to be made once a week. Edward J. Carter."

The defendant was called, sworn and examined as a witness for the plaintiffs and proved that he shipped from his own orchard that year about three thousand baskets of peaches, and also that he was authorized by Thomas Reynolds to sell his crop of the same year for him, which it was proved by another witness, amounted to twelve hundred baskets. He also admitted that he did not deliver any peaches to the plaintiffs in 1865. The plaintiffs then proved that there were no peaches sold and delivered at that station that season, and inquired the price at which they had sold that year at the nearest station to it on the railroad, Camden Station.

*Eli Saulsbury*, for the defendant, objected to the question, and that such evidence was not admissible. Upon a contract to deliver goods, the general rule of damages for nondelivery is their market value at the time and place of the promised delivery, if no money has yet been paid by the buyer for them, but if he has already paid the price of them in advance, he may recover the highest price for which such goods sold at the same place at any time between the stipulated day or time of delivery and the time of trial. But in either case, the inquiry is confined to the place of the stipulated delivery of them. Such is the establishd rule of law on the subject, and the plaintiffs cannot be allowed to depart from it. 2 *Greenl. Ev. sec.* 261. 2 *Barn. & Adol.* 932, *Ch. on Contr*, 4. 30 *Maine Rep.* 493.

*Draper*, for the plaintiffs. When there is no market and no market price, or value, of course, of such goods at the place of the promised delivery, the next best evidence is in such case admissible, and that would be at the nearest station on the railroad where there was at the time a market for them. For it is only when evidence of their value at the place of delivery is both certain and practicable, that evidence of their value at any other place is inadmissible. *Wendall v. Stuart.* 22 *Barb. Sup. Ct. Rep.*158. *Gregory v. McDowell,* 8 *Wend.* 486.

*By the Court.* The principle of evidence and the authorities cited warrant the admission of the testimony offered, as it has been proved that there were no peaches sold and delivered, and there was no market for them that season, at the station at Willow Grove, but that there was at the Camden Station, the nearest to it on the road. In regard to which the proof was that the price varied from 70cts to 85cts per basket according to quality and the time of delivery during the season, and that some had sold as high as $1.10 per basket.

The evidence for the defendant was that on the day preceding the date of the agreement, Chambers went to the farm of Carter and offered him 56cts per basket for his peaches that season, and said that was the market price and that he had not offered more to any other person, to which the defendant replied that he had not been from home for ten days and did not know at what price they were selling, but he wanted as much for his as other persons were getting. On the following day both of the plaintiffs drove out to his farm, and not finding him at home, but learning where he had gone, and inquiring if any other buyers had been to see him, or he had received any other offer for his peaches in the meanwhile, and were informed that there had, followed him to the place to which he had gone, and the result of their interview on that occasion, was the agreement in question. Some further proof was also introduced that about that time the

plaintiffs had bought peaches of other persons at a higher price than 56cts, but they were to deliver them at stations further up the road and nearer to Philadelphia, and that it would consequently cost less to transport the peaches bought of them to market.

*Draper*, for the plaintiffs. The defense would be on the facts proved, that the contract of sale in this case had been vitiated and avoided by the fraudulent misrepresentations of the plaintiffs ; but fraud must be proved, and is not to be presumed, or to be established by slight proof or trivial circumstances, or by ordinary declarations as to market prices of any article, which, at best, are fluctuating, unstable and uncertain from one day to another. Actual fraud is always a matter of fact, and must be proved and established as such in any case, but what will constitute such an actual fraud as will vitiate and avoid a contract of this kind, is a question of law, and it was therefore for the court to say and instruct the jury whether the evidence was sufficient for that purpose. Admitting all that had been proved as to the declarations and representations of the plaintiffs to the defendant, it amounted to no fraud in contemplation of law. *Vernon v. Keys,* 12 *East* 638. 2 *Kent's Com.* 648. 2 *Pars. on Contr.* 773 *note b. Fulton v. Hord et al.* 34 *Penn.* 371. *Foley v. Cowgill,* 5 *Blachf. Rep.* 18. *Saunders v. Hatterman,* 2 *Iredell Rep.* 32. *Laidlaw v. Organ,* 2 *Wheat.* 178.

*Eli Saulibury*, for the defendant. In a bargain or contract like this, any intentional misrepresentation or concealment of a material fact calculated to mislead or impose upon, or to take advantage of the other contracting party, constitutes such an actual and positive fraud as will vitiate and avoid it in law ; and of such a character were the declarations and misrepresentations deliberately made by the plaintiffs to the defendants in this case. *Ch. on Contr.* 591, 593. *Smith v. Rickards,* 13 *Pet.* 36. 2 *Kent's Com.* 482, 3, 4. 27 *Maine* 326. 1 *Com. on Contr.* 38.

*Bate. on Com. Law, sec.* 169.    2 *Pars. on Contr.* 770.    6
*Barr.* 366, 367.    1 *Greenl. Ev. secs.* 197, 199.

*Draper* replied.

*The Court, Gilpin, C. J., charged the jury.*  As regards
the plea of the defendant, that the contract on which the
plaintiffs ground their claim for damages was procured
through fraud, namely, that the defendant was induced to
enter into the contract through the false representations
of the plaintiffs  as to the value or  price of peaches, I may
remark generally, that it is true, that, according to the
moral law, we are bound to do unto others as we would
have them do unto us.    Now, this is a perfect law, because
it is God's law, for all God's laws are perfect.    But the
law which regulates the business affairs of men and  ascer-
tains their rights and their remedies, is the municipal law—
the law of the land, as made and established by man.  And
in as much as  it partakes, more or less of man's imperfect
nature, it makes, as it were, some allowance for human
infirmity.    It is not, therefore, every false representation,
even when made with a full  knowledge  of its falsity, that
will amount, in judgment of law, to such  a  fraud as will
invalidate a contract, and  deprive a party of his right  to
enforce it.    But a false representation by a party of a fact
materially affecting the  value of  the contract, peculiarly
within his own  knowledge, and in  respect  to which the
other party, in the exercise of proper vigilance, had not an
equal opportunity of  ascertaining the truth, is fraudulent,
and will vitiate any contract obtained or procured under
the  influence of such false representation.    If, however,
the truth or falsity of the representations might have been
tested by ordinary vigilance and attention, it is the party's
own fault, if he  neglects to do so, and the  law holds him,
under such circumstances, to be without remedy.    And,
therefore, it seems to be well settled, that misrepresenta-
tions made by one party contracting with an other, as
to the  quantity  or value  of  a commodity  or article  in

the market, where correct information on the subject is equally within the power of both parties, if they act with equal diligence, do not in contemplation of law constitute fraud.

Now, in fact and in law, the parties to this suit appear to have dealt with each other on equal terms. They were both doing business in a peach growing community. One was a grower and seller of peaches, and the other was a dealer in, or buyer of peaches. They had equal opportunities of inquiring, and of ascertaining and knowing the then market value of the article. The eyes of one party were as much open as those of the other, the means of information and knowledge were equally within reach of, or open to both, and all that was required to ascertain the then actual value of the article was ordinary vigilance, just that sort of vigilance which a person of common sense and prudence, would naturally exercise in regard to such a transaction. As I have already remarked, the parties were dealing with each other on equal terms; there existed between them no relations of trust or confidence— each was trying to make the best bargain he could ; and under such circumstances, the defendant had no right to rely on the representations of Chambers, and if he did so, it was his own folly. The representations relied on by the defendant, as false and fraudulent, and as vitiating the contract, are disclosed by the testimony of Harman Carter and others. Harman Carter said in substance, that Chambers, one of the plaintiffs, called at his father's house on the 13th of July to bargain for his crop of peaches—that his father told him he had not been from home, and did not know the price of peaches—that Chambers assured his father, that fifty six cents a basket, was all he had paid, and all he had offered, and all he had heard that any other person had offered, that fifty cents was all he had offered and that he could not give any more, that there was a great deal of talk between them—that he was with them at the carriage house at noon for about an hour, and heard these representations there. No bargain was made on that day.

On the next day, the 14th of July, the plaintiffs drove up to the house and inquired for the defendant and were told by witness that "he had gone over to grandmother's;" they then inquired if any person had been there, and were told that there had been—they asked, what for, and were answered " to buy peaches." They inquired the direction the defendant had gone, and when informed, said they would overhaul him, and then turned and drove off. On cross examination witness stated that he had heard his father say on the evening of the 14th that he had made a ' sort of ' bargain at sixty-five cents a basket.

I believe I have stated in substance all the representations relied upon by the defendant as false and fraudulent, though, perhaps, not in the exact words. On the one hand it is contended that these representations were false, and a fraud on the defendant, and that therefore, the contract is invalid. On the other hand it is insisted that the representations were true, but that if false, they do not in law amount to fraud. They also contend that the defendant did not rely on the representations of the plaintiffs as to the price of peaches, but claimed and obtained sixty-five cents per basket. The question, therefore, arises as to the legal effect of these representations, and upon this question we are called on to express an opinion.

I have already stated to you the rules of law applicable to this subject, and I now say to you, that assuming all the representations of the plaintiffs as to price or value of peaches, disclosed by the testimony in this case to have been false, they do not under the circumstances, in contemplation of law, amount to such fraud as will vitiate the contract.

The plaintiffs had a verdict for $390.73.